## Tongue vs. Morton.

APPEAL from the Court of Chancery. The case is accurately stated by the appellant's counsel in his argument, made at this term before BUCHANAN, EARLE, MARTIN, and DORSEY, J.

*Magruder*, for the appellant. The facts in this case are, that *John Westeneys*, on the 29th August 1786, executed a will, in which he directed all his estate, real or personal, to be sold by his executors, and after paying his debts and funeral charges, that there should be remitted to Messrs. *Eliza* and *Mary Steries*, & Co. of *Edinburgh*, £260 st'g. After some trifling legacies, the remaining part of the pro-

A decree in equity for the sale of lands to pay debts or legacies, or for the purpose of distributing the proceeds among those entitled, is a proceeding *in rem.* The chancellor has the power of enforcing such a decree, by ordering the possession to be delivered to the purchaser under the decree, in certain cases.

The exercise of this power, in relation to all such persons as were parties to the proceedings, and whose rights have been determined by the decree, is essential to the full administration of justice. Persons who come into the possession of the land *pendente lite,* claiming title to it under the parties to the bill, or some of them, stand in the same predicament with those whom they represent in point of interest. But where a person was in possession at the time the bill was filed, claiming adversely, and was not a party to the decree, his interest cannot be affected by it; and from such a possession he cannot be removed until his title is adjudged to be defective in the regular and established course of judicial proceedings, and not in a summary manner. How far a third person, who comes into the possession during the pendency of the suit in equity, claiming adversely to the litigating parties, can, after a decree & sale, be removed in a summary manner at the instance of the purchaser? *Quere* Whether the will in this case was re-

*T. Stone,* for the appellee.

THE GENERAL COURT *reversed* the judgment of the County Court. The appellee appealed to the Court of Appeals. and, at May Term, 1784, the judgment of reversal was affirmed in the Court of Appeals.

voked by a subsequent marriage and the birth of a child? *Quere*

ceeds of his estate. he gave to his beloved friend, and in‑ tended wife, *Mary Steries*, to. be remitted and paid to her as soon as possible and convenient after his death. The testator went to *Edinburgh*, married Miss *Steries*, by whom he. had issue, and lived some years, The will was not ad‑ mitted to probat till the year 1808. In 1813 letters of ad‑ ministration. *de bonis non*, on the estate of the testator, were granted to. *Thomas Sellman*, who, as *adm'r. d. b. n.* petitioned. the chancellor to. appoint a trustee to sell. the, real estate of the deceased; and the chancellor passed a, decree to that effect at February term 1817. In August 1817, the trustee reported, that under the said. decree he had sold the property; and. that *Joseph Morton*, the appel‑ lee, became the purchaser. This sale was ratified on the. 14th. of Nov. 1817. The appellee. filed a. petition, stating that *Tongue*, the appellant, without any right or legal au‑ thority, had taken and held, possession. of the land sold to. him, alleging the same to be subject to. escheat for, want of the heirs of *Westeneys*. The petitioner prayed the. chan‑ cellor to grant him an *injunction* to put him in possession against *Tongue*, who appeared and put in an answer. A commission issued, and, testimony was taken. The chan‑ cellor ordered an injunction to be issued, as prayed.

On these. facts, the counsel contended, that the decree. was erroneous—1. Because the marriage and. birth of a child, revoked the will of *Westeneys*. He cited *Rob. on Wills*, 395. 2. Because the chancellor was not authorised to direct the sale at the instance of the administrator *de. bonis. non*, under the act of 1785, ch. 72, s. 4. 3. Be‑ cause the appellant, not being a party to the proceedings, and claiming under no person who was a party, his title. could not be. inquired into in this summary way, at the in‑ stance of the purchaser, under the chancellor's decree. 4. Because in no. case can process. of this. description be. issued, unless the title. to the property has been first de‑ cided by the court, and the decree directs a sale to be made of the. property, and naming the property, or giving it some other certain description. This decree only di‑ rected a sale of the estate directed by the will of *J. W.* to be sold, and there is no proof in this case that *J. W.* was seized of the land now in dispute, at the time he made his will. 5. The whole proceedings. under the will is erroneous, because, if the will was valid, it appears by

the proof in the case that Mrs. *Westeneys*, (formerly Miss *Steries*,) who was to have the proceeds of sale, survived her husband, and chose to hold the land.

*Shaw* and *Ridout*, for the appellee. [As the court did not take into view any of the points insisted on by the appellant's counsel, except that relative to the power of the court of chancery to issue the injunction referred to, the authorities referred to by the counsel for the appellee are omitted.] They insisted, that the chancellor could not do otherwise than cause possession of the premises to be delivered to the purchaser. That the appellant had not such an interest as to enable him to become a party to these proceedings, and to entitle him to an appeal. His appeal is from the issuing of a judicial process of the court; and not from the decree confirming the sale which had been made of the premises.

*Magruder*, in reply, was stopped by the court.

The opinion of the court was delivered by

Dorsey, J. This court, in reversing the decree of the chancellor, so far from feeling a disposition to interfere with the acknowledged jurisdiction of the court of chancery, wish to preserve it unimpaired. And in this case they think there is no authority to warrant his decision, and that the principle involved in it, would in practice not only be inconvenient, but subversive of the established modes of deciding the rights of property.

That a decree in equity for the sale of lands, to pay debts or legacies, or for the purpose of distributing the proceeds among those entitled, is a proceeding *in rem*, cannot be questioned, and that the chancellor has the power of enforcing such a decree, by ordering the possession to be delivered to the purchaser under the decree in certain cases, cannot be denied. The exercise of this power, in relation to all such persons as were parties to the proceedings, and whose rights have been determined by the decree, is essential to the full administration of justice; for as the decree, and sale under it, passes the right, it is but just and equitable that the possession should accompany it, as part of the title. And upon principle it would seem fit, that persons who come into the possession of the land *pendente lite*, claiming title to it under the parties to the bill, or some of them, should stand in the same predicament with those whom they represent in point of interest, on the ground

that their condition cannot be better than that of those under whose authority they have obtained the possession. To send the purchaser, under a decree of the court of chancery, in such cases, to a legal forum, to clothe his title with the possession, would be denying to that court the power of efficiently enforcing rights which had passed *in rem judicatam.* But the case now before the court is essentially different. As the appellant, *Tongue*, was not a party to the original decree, his interest cannot be affected by it. Besides, he was in the possession of the land, at the time the original petition was filed, claiming, adversely to the will of *John Westeneys*, under an escheat warrant. From such a possession he could not be removed, until his title was adjudged to be defective in the regular and established course of judicial proceeding. Such an interest cannot, consistently with the principles of our jurisprudence, be the subject of inquiry, and decided on, in a summary manner, by way of motion.

It would be both unnecessary and improper, in the view which the court has taken of this subject, to decide whether the will of *John Westeneys* was revoked by his subsequent marriage, and the birth of a child, or whether the lands were escheatable. It is sufficient for us to decide, that although the court of chancery, in many instances, has jurisdiction to enforce its own decrees, by giving possession without sending the purchaser to a court of law, there to seek redress by an action of ejectment, yet that this case is not one of that description.

The court do not mean to intimate an opinion how far a third person, who comes into the possession during the pendency of the suit in equity, claiming adversely to the litigating parties, can after a decree and sale, be removed, in a summary way, at the instance of the purchaser.

DECREE REVERSED.